IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| KPM INVESTMENT O, LLC,[1] | Case No. 24-53073-PWB |
| Debtor. | (Joint Administration Requested) |

**SECURED CREDITOR'S PRELIMINARY OBJECTIONS
TO FIRST DAY MOTIONS AND RESERVATION OF RIGHTS**

Secured creditor Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2021-2 Trust Mortgage Pass-Through Certificates ("Lender") hereby objects on a preliminary basis to the "first day" relief requested by debtor KPM Investment O, LLC ("Debtor" or "Borrower"), including but not limited to the authorization to use Lender's cash collateral on an emergency, interim or final basis. In support of its objections, Lender states as follows:

**Preliminary Statement**

1.  Lender is the current holder and owner of a defaulted $12,375,000.00 loan made to Debtor in May 2021 (as more fully described herein, the "Loan"). The Loan is secured by deeds of trusts for the Debtor's four real properties and apartment complexes (as more fully described herein, the "Security Instruments"). Among other monetary and non-monetary defaults, Debtor defaulted under the Loan by failing to make monthly debt service payments beginning in February 2023, failing to avoid additional liens and other non-permissible encumbrances against the collateral properties, and failing to maintain and reasonably manage the collateral properties.

---

[1] The last four digits of Debtor's taxpayer identification number are 6999. Debtor's mailing address in this Chapter 11 case is 6370 Shannon Parkway, Union City, GA 30291. Debtor has sought joint administration with the related case *In re KPM Investment B, LLC*, Case No. 24-53226-PWB.

6101589573                            - 1 -

2. On November 7, 2023, Lender commenced an action (generally, the "State Court Action") in Fulton County Superior Court by filing a *Verified Complaint* (the "State Court Complaint") against the Debtor, KPM Investment B LLC (the "Pledgor Guarantor" or "KPM B Debtor")[2] and non-debtor Joseph Perlmutter (the "Sponsor Guarantor"). A copy of the State Court Complaint is attached hereto as **Exhibit 1**. Due to the deteriorating condition of the collateral properties and the living conditions facing Debtor's apartment tenants, Lender filed an *Emergency Motion for Appointment of Receiver* (the "Receiver Motion") on November 21, 2023. A copy of the Receiver Motion is attached hereto as **Exhibit 2**. A hearing on the Receiver Motion and Lender's request for entry of default was scheduled for March 26, 2024, but was stayed as a result of Debtor's bankruptcy filing the previous night.

3. Now more than a week into its bankruptcy case, Debtor has filed four motions (together, the "First Day Motions"), three of which seek relief on an "emergency" basis:[3]

    a. *Motion of the Debtors for Entry of an Order Authorizing and Directing the Joint Administration of the Debtors' Chapter 11 Cases for procedural Purposes Only* [Docket No. 10] (the "Joint Administration Motion");

    b. *Emergency Motion for Entry of an Order (A) Authorizing Debtor to Pay Certain Prepetition Labor Obligations, and (B) Directing Banks to Honor Related Transfers* [Docket No 11] (the "Labor Obligations Motion");

    c. *Emergency Motion for Order Authorizing the Continued Use of Existing Bank Account* [Docket No. 12] (the "Cash Management Motion"); and

    d. *Emergency Motion for Authority to Use Cash Collateral* [Docket No. 13] (the "Cash Collateral Motion").

---

[2] Upon information ad belief, the Pledgor Guarantor is the sole member and owner of 100% of the Debtor's equity interests. On March 28, 2024, the Pledgor Guarantor commenced its own chapter 11 case in this Court, *In re KPM Investment B, LLC*, Case No. 24-53226-PWB (the "KPM B Case").

[3] Capitalized terms used but not otherwise defined herein are intended to have the meaning set forth in the respective First Day Motion.

6101589573      - 2 -

4. Lender has not consented (and does not consent) to the relief sought in any of the First Day Motions. Indeed, the Debtor has not sought Lender's consent nor its position with respect to any of the First Day Motions despite acknowledging that it owes at least $12 million on the Loan and that "Lender may assert an interest in Cash Collateral." *See* Docket No. 13 (Cash Collateral Motion) at ¶¶ 9-10. Accordingly, and for the reasons set forth more fully herein, (i) the relief sought in the Cash Collateral Motion should be denied, and (ii) any relief granted with respect to any balance of the First Day Motions should be limited as requested below.

## Factual Background

### A.     The Loan and the Loan Documents

5. Debtor is the borrower under the Loan, which was originally made by Corevest American Finance Lender LLC (the "Original Lender") on or about May 27, 2021, as evidenced by, and subject to, without limitation, the following documents:

   a. A Promissory Note (the "Note") in the amount of $12,375,000.00, executed on or about May 27, 2021, by and between Borrower and Original Lender;

   b. A Loan Agreement (the "Loan Agreement") executed on or about May 27, 2021, by and between Borrower and Original Lender;

   c. A Pledge Agreement (the "Pledge Agreement") executed on or about May 27, 2021, by and between Pledgor and Original Lender;

   d. An Environmental Indemnity Agreement (the "Indemnity") executed on or about May 27, 2021, by and between Borrower and Original Lender;

   e. A total of four (4) separate Deeds to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Security Deeds"), each dated May 27, 2021, as conveyed from Borrower to Original Lender (collectively the "Security Instrument");[4]

---

[4] The four (4) Security Deeds were recorded as follows: (1) in Deed Book 64169, Page 456, with the Clerk of Superior Court, Fulton County, GA; (2) in Deed Book 29475, Page 357, with the Clerk of Superior Court, DeKalb County, GA; (3) in Book 12510, Page 043, with the Clerk of Superior Court, Clayton County, GA; and (4) in Book 4793, Page 73, with the Clerk of Superior Court, Spalding County, GA.

   f. A Pledgor Guaranty (the "Pledgor Guaranty"), executed on or about May 27, 2021, by and between the Pledgor and Original Lender; and

   g. A Sponsor Guaranty (the "Sponsor Guaranty"), executed on or about May 27, 2021, by and between the Sponsor Guarantor to Original Lender.

The Note, Loan Agreement, Pledge Agreement, Indemnity, Security Instrument, Pledgor Guaranty, and Sponsor Guaranty are collectively referred to herein as the "Loan Documents."

6. True and correct copies of the Loan Documents are annexed to the State Court Complaint (and thus included in Exhibit 1 hereto) as follows:

| Exhibit | Loan Document |
|---|---|
| A | Note |
| B | Note Allonges |
| C | Loan Agreement |
| D | Pledge Agreement |
| E | Security Deed (Fulton County) re: Oakley Woods Apartments |
| F | Security Deed (DeKalb County) re: Autum Cove Apartments |
| G | Security Deed (Clayton County) re: Pine Knoll Apartments |
| H | Security Deed (Spalding County) re: Garden Gate Apartments |
| I | Omnibus Assignments |
| J | Pledgor Guaranty |
| K | Sponsor Guaranty |

  **B.** **Events of Default**

7. Debtor, Pledgor Guarantor and Sponsor Guarantor are responsible and liable for numerous continuing defaults under the Loan Agreements, of both monetary and non-monetary nature, including for, but not limited to: (i) failure to make payments as due for repayment of the Loan; (ii) the accrual of non-permissible liens and encumbrances on their assets and/or collateral

properties; and (iii) failure to properly manage and maintain the collateral properties in good and safe condition and repair.

8. For example, Debtor has failed to make Monthly Debt Service Payments, accrued interest, and late charges as and when due under the Loan Documents, including but not limited to those payments due on February 9, 2023, March 9, 2023, April 9, 2023, May 9, 2023, June 9, 2023, July 9, 2023, August 9, 2023, September 9, 2023, and October 9, 2023. The amount outstanding for these missed payments, which continue to accrue.

9. On or about April 28, 2023, August 4, 2023, and October 6, 2023, Lender sent Borrower *Notices of Default* ("Default Notices") demanding immediate payment of all amounts due. The October 6, 2023 Notice of Default also (i) accelerated the maturity date of the Loan, (ii) and revoked and terminated Debtor's license to collect rents under the Loan Documents, and (iii) demanded that Debtor deliver all rents together with supporting financial statements, after payment of customary and necessary operating expenses to Lender. Despite repeated demands by Lender, including the Default Notices, Debtor have failed to pay any of the debts due under the Loan or cure any of the existing defaults.

10. Debtor also defaulted under the Loan Documents by failing to perform certain non-monetary obligations required therein. For example, Lender is informed and believes that numerous liens exist on Debtor's assets, none of which are permitted encumbrances, and none of which were noticed or disclosed to Lender (promptly or otherwise) and thus each of which constitutes a separate Event of Default under the Loan Documents.

11. More acutely, upon information and belief, Debtor defaulted under the Loan Documents by failing to adequately maintain the collateral properties in good and safe working order and failing to manage the properties in a commercially reasonable manner. Specifically,

6101589573                                              - 5 -

Lender's agents have inspected the Oakley Shoals Apartments and Autumn Cove Apartments and found numerous vacant units in significantly dilapidated and damaged conditions, clearly evidencing mismanagement, lack of maintenance, and waste. Separate inspections at the Pine Knoll Apartments and Garden Gate Apartments, revealed numerous vacant units in severe disrepair and deteriorated condition, evidently due in large part to mismanagement and lack of proper maintenance. Upon information and belief, the issues with the collateral properties have not been remedied and thus remain Events of Default under the Loan Documents.

### C. The State Court Action

12. Lender commenced the State Court Action against Debtor, Pledgor Guarantor and Sponsor Guarantor on November 7, 2023. The State Court Complaint alleges monetary and non-monetary defaults, including failure to maintain the collateral properties and pay taxing authorities and vendors, and contains the following claims:

(I) breach of the Loan Agreement and related documents against Debtor;

(II) breach of the Pledgor Guaranty against the Pledgor Guarantor;

(III) breach of the Sponsor Guaranty against the Sponsor Guarantor;

(IV) an equitable claim seeking the appointment of a receiver under the loan documents and Georgia law to protect the collateral properties;

(V) attorneys' fees under the Loan Documents; and

(VI) attorneys' fees under O.C.G.A. § 13-6-11.

Lender filed the Receiver Motion on November 21, 2023 due to the deteriorating condition of the collateral properties.

13. Lender and Borrower unsuccessfully attempted to work out Debtor's defaults both before and after Lender filed the State Court Complaint, but Debtor could not cure its continuing defaults. Lender revisited the collateral properties in late January, 2024 and discovered that not

only had Debtor failed to improve the condition of those properties, it had let them deteriorate further.

14. Neither Debtor nor Pledgor Guarantor ever answered the State Court Complaint, and Lender filed a *Motion for Default* against both on February 9, 2024. Sponsor Guarantor could not be served with process, and Lender filed a motion to serve him by publication on February 23, 2024.

15. The state court set a hearing for March 26, 2024 on all of the pending motions, including the Receiver Motion, Lender's request for default, and Lender's motion for service of the Sponsor Guarantor by publication. The night before the hearing, Debtor filed its petition for relief in this Court.

16. The following day, on March 26, 2024, no one representing Debtor, Pledgor Guarantor, or Sponsor Guarantor appeared for the hearing in the State Court Action. The state court delayed ruling on any of the motions and asked counsel for the Lender to provide an update on the bankruptcy proceedings in April. On March 28, 2024, the Pledgor Guarantor filed its petition for relief in this Court, commencing the KPM B Case.

**Objections**

A. **The Cash Collateral Motion**

17. Lender objects to Debtor's use of Lender's Cash Collateral. In the absence of Lender's consent (which Debtor has not sought), Debtor can only use Cash Collateral if Debtor can establish that the value of Lender's interest therein is adequately protected. 11 U.S.C. § 363(e). Debtor fails to meet this standard. In fact, the Cash Collateral Motion offers little more than unsupported background facts and conclusory statements to argue that Lender's interests are adequately protected. The Court cannot accept such bare allegations. *See In re Swedland Dev.*

*Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (cited by Debtor for the proposition that "[w]hat constitutes adequate protection *must be evaluated* on a case-by-case basis.") (emphasis added); *see* Docket No. 13 (Cash Collateral Motion) at ¶ 19.

18.     There is no reasonable dispute that Lender holds a claim against Debtor's estate in excess of $12 million secured by the Properties. There is likewise no reasonable dispute that Lender's security interests extend to the rents and other revenue generated by the Properties. Indeed, Debtor concedes that it is the borrower under the Loan and that "[c]ertain revenue of the Debtor may constitute Cash Collateral". *See* Docket No. 13 (Cash Collateral Motion) at ¶¶ 9-10.[5] Accordingly, Lender has met its burden of proof as to the validity, priority and extent of its interest in Cash Collateral – which, in any event, Debtor has not challenged. *See* 11 U.S.C. § 363(p)(2) (placing the burden of proof as to the issue of the validity, priority, or extent of an interest in cash collateral on the entity asserting such interest).

19.     Debtor, on the other hand, has failed to meet its burden of proof on the issue of adequate protection. As a threshold matter, the Cash Collateral Motion fails to actually attach the Budget which is proposed to govern Debtor's Cash Collateral use. *See* Docket No. 13 (Cash Collateral Motion) at Exhibit A (stating that the Budget is "To be supplemented"). The Cash Collateral Motion should be denied for this failure alone.

20.     Beyond the Budget, the only form of adequate protection proposed by Debtor is "a replacement lien in post-petition collateral of the same kind, extent, and priority as the liens existing pre-petition" (defined as the "<u>Adequate Protection Liens</u>"), expect with respect to causes of action arising under chapter 5 of the Bankruptcy Code, which are excluded. In this case, however, the proposed grant of replacement Adequate Protection Liens is insufficient to

---

[5] Lender is in the process of preparing its proof of claim. In the meantime, copies of the Loan Documents are annexed to the State Court Complaint.

6101589573                                  - 8 -

adequately protect Lender's interest. Amongst other things, Debtor's post-petition revenue is insufficient to meet its general operational and administrative expenses. For example, in January 2024, Debtor's total monthly income at its four Properties was $117,455.00 against total monthly operating expenses of $165,766.00 resulting in a net deficient of -$48,311.00. Consequently, the Adequate Protection Liens fail to provide Lender with the "indubitable equivalent" it is entitled to receive as adequate protection against the diminution in value of its interests.

21. For these reasons, and such other reasons as Lender may present at or prior to any "emergency", interim, or final hearing, the Court should deny the Cash Collateral Motion.

**B.     The Labor Obligations Motion**

22. Lender does not object to the general relief requested in the Labor Obligations Motion except to the extent Debtor seeks to use Lender's Cash Collateral to pay for the Labor Obligations or Processing Costs. It is unclear whether Debtor has any assets other than the four apartment Properties identified in its First Day Motions or any unencumbered cash which it could use to pay the Labor Obligations and Processing Costs. And, as noted above, Lender has not consented to use of its Cash Collateral for payment of these expenses and costs. Accordingly, Debtor should not be authorized to pay any Labor Obligations or Processing Costs from Lender's Cash Collateral.

**C.     The Cash Management Motion**

23. Lender does not object to Debtor's proposed continued use of its Chase bank account, provided that any such authorization not impair, and instead preserve, Lender's rights under the Loan Documents. Similarly, Lender's position with respect to Debtor's continued use of its pre-petition bank account or any subsequent account opened in connection with this case should

not be construed (and is not intended) as consent to use of any funds in those accounts to the extent such funds are Lender's Cash Collateral.

### D. The Joint Administration Motion

24. Lender does not object to the joint administration of this case and the KPM B Case for procedural purposes only. However, consistent with its below reservation of rights, Lender's position with respect to joint administration should not be construed (and is not intended) as an admission that either this case or the KPM B Case is properly filed, in good faith or otherwise, nor as a waiver of any right to seek dismissal of either case or relief from the automatic stay on any ground.

### Reservation of Rights

25. Lender reserves all of its rights, claims, causes of actions, defenses, and other interests with respect to the Loan, the Loan Documents, each of Debtor, Pledgor Guarantor, and Sponsor Guarantor, and any and all matters arising with respect to this chapter 11 proceeding, the KPM B Case, the State Court Action, and any other case, action, or proceeding relating thereto, including with respect to any relief sought in the First Day Motions on an "emergency, interim, or final basis. Lender further reserves the right to supplement this preliminary objection at any time and to file one or more proof of claim(s) evidencing all claims and other indebtedness owed by Debtor to Lender. Finally, nothing in this objection is intended or shall be deemed to waive any (i) rights to have final orders in non-core matters (or core matters as to which such core status violates the Constitution) entered only after *de novo* review by an Article III judge; (ii) right to trial by jury in any proceedings so triable or in any proceeding related thereto; (iii) right to have the reference withdrawn in any matter subject to mandatory or discretionary withdrawal; or (iv) other rights,

claims, actions, defenses, setoffs, or recoupments to which Lender is or may be entitled under agreements, in law, or in equity.

WHEREFORE, Lender respectfully requests that (i) the Court deny the relief sought in the Cash Collateral Motion; (ii) the Court deny the relief sought in any First Day Motion to the extent the Debtor would seek to use Lender's Cash Collateral or other property in which Lender has an interest without Lender's consent; and (iii) the Court grants such other relief in favor of the Lender as may be just and proper under the circumstance.

Respectfully submitted, this 2nd day of April 2024.

        **BRYAN CAVE LEIGHTON PAISNER LLP**

        */s/ Christian J. Bromley*
        Christian J. Bromley (Georgia Bar No. 206633)
        1201 W. Peachtree Street, 14th Floor
        Atlanta, Georgia 30309
        Telephone:   (404) 572-6600
        Facsimile:   (404) 572-6999
        Email:   christian.bromley@bclplaw.com

        -and

        Jarret P. Hitchings (*Pro hac vice* request forthcoming)
        One Wells Fargo Center
        301 South College Street, Suite 2150
        Charlotte, North Carolina 28202
        Telephone:   (704) 749-8965
        Email:   jarret.hitchings@bclplaw.com

        *Counsel to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2021-2 Trust Mortgage Pass-Through Certificates*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| KPM INVESTMENT O, LLC,[1] | Case No. 24-53073-PWB |
| Debtor. | (Joint Administration Requested) |

**CERTIFICATE OF SERVICE**

This is to certify that I have on this, the 2nd day of April 2024, electronically filed the foregoing **SECURED CREDITOR'S PRELIMINARY OBJECTIONS TO FIRST DAY MOTIONS AND RESERVATION OF RIGHTS** using the Court's CM/ECF filing system, which generated an email notice of the filing, linked to this document, to those parties who receive electronic notices in this case.

Dated: April 2, 2024

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Christian J. Bromley*
Christian J. Bromley (Georgia Bar No. 206633)
1201 W. Peachtree Street, 14th Floor
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:   (404) 572-6999
Email:       christian.bromley@bclplaw.com

*Counsel to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2021-2 Trust Mortgage Pass-Through Certificates*

---

[1] The last four digits of Debtor's taxpayer identification number are 6999. The Debtor's mailing address in this Chapter 11 case is 6370 Shannon Parkway, Union City, GA 30291. The Debtor has sought joint administration with the related case *In re KPM Investment B, LLC,* Case No. 24-53226-PWB.

6101589573

- 12 -